**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VIIV HEALTHCARE UK LTD. and VIIV HEALTHCARE CO.,<br><br>               Plaintiffs,<br>      v.<br>LUPIN LTD., et al.<br><br>              Defendants. | C.A. No. 11-cv-576-RGA<br>(CONSOLIDATED)<br><br>**FILED UNDER SEAL** |

**PLAINTIFFS' OPENING POST-TRIAL BRIEF
ON INFRINGEMENT**

*Of Counsel:*

F. Christopher Mizzo
William H. Burgess
Charles A. Fernández
Craig T. Murray
Hugham Chan
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 879-5000

Tiffany P. Cunningham
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(302) 862-2000

July 5, 2013

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market St.
12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

*Attorney for ViiV Healthcare UK Ltd. and
ViiV Healthcare Co.*

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ..............................................................................1

SUMMARY OF THE ARGUMENT ..........................................................................................2

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT ...........................................................................................................................5

I.      VIIV   DEMONSTRATED   THAT   LUPIN   DIRECTLY   INFRINGES
        FORMULATION CLAIM 47...........................................................................................7

        A.      Claim 47 and the Court's Construction ................................................................7

        B.      Lupin's Generic Product Contains the Claimed Active Ingredients,
                Including Abacavir...............................................................................................7

        C.      At the Very Least, the Abacavir Element Is Met Under the Doctrine of
                Equivalents.........................................................................................................11

        D.      Lupin's Generic Product Contains the Other Limitations of Claim 47 .................12

II.     VIIV DEMONSTRATED THAT LUPIN INDIRECTLY INFRINGES METHOD
        CLAIMS 4, 26, 27, 29, 30, 34, 36, 38, AND 39.................................................................13

        A.      The Method Claims and the Court's Construction ................................................14

        B.      Lupin's Generic Product Is To Be Used for the "Treatment or Prevention
                of the Symptoms or Effects" of HIV Infections ....................................................16

        C.      Lupin's Generic Product Contains the Active Ingredients Recited in All of
                the Method Claims, Including Abacavir, And At the Very Least, Meets the
                Abacavir Element Under the Doctrine of Equivalents ..........................................17

        D.      Lupin's Generic Product Contains the Remaining Limitations of the
                Method Claims....................................................................................................18

        E.      Induced and Contributory Infringement of the Method Claims ...........................19

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042 (Fed. Cir. 2010)...................................................... 19

*Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484 (E.D. Va. 2005)........... 6

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc) ................................. 6

*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349 (Fed. Cir. 2012) ................................................. 11

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)...................................................... 13

*Forest Labs., Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263 (Fed. Cir. 2007) ...................................... 6

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011)........................................ 13, 14

*In re Alfuzosin Hydrochloride Patent Litig.*, No. 08-MD-1941, 2010 WL 1956286
  (D. Del. May 14, 2010) ......................................................................................... 5, 6, 13

*In re Rosuvastatin Calcium Patent Litig.*, 719 F. Supp. 2d 388 (D. Del. 2010),
  *aff'd*, 703 F.3d 511 (Fed. Cir. 2012) .............................................................................. 7

*Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367 (Fed. Cir. 2003) ................................... 9

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006) ............................................ 10

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364 (Fed. Cir. 2005) .................................... 11

*Teva Pharms., USA, Inc. v. Leavitt*, 548 F.3d 103 (D.C. Cir. 2008) ............................................. 3

*Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17 (1997)...................................... 11

*Wyeth v. Lupin Ltd.*, 505 F. Supp. 2d 303 (D. Md. 2007)............................................................. 7

**Statutes**

21 U.S.C. § 355(j) .......................................................................................................................... 2

21 U.S.C. § 355(j)(2)(A)(i)-(v) ...................................................................................................... 4

21 U.S.C. § 355(j)(2)(A)(vii)(IV) .................................................................................................. 1

35 U.S.C. § 271(b)-(c) .................................................................................................................. 13

35 U.S.C. § 271(c) ........................................................................................................................ 14

35 U.S.C. § 271(e)(2)...................................................................................................................... 5

This post-trial brief addresses Defendants Lupin Ltd.'s and Lupin Pharmaceuticals, Inc.'s (collectively "Lupin") infringement of U.S. Patent No. 6,417,191 (the "'191 patent"). Plaintiffs ViiV Healthcare UK Ltd. and ViiV Healthcare Co. (collectively "ViiV") submit that the evidence showed that Lupin will infringe claims 4, 26, 27, 29, 30, 34, 36, 38, 39, and 47, and thus respectfully request that the Court enter judgment accordingly.

## NATURE AND STAGE OF PROCEEDINGS

ViiV sued Lupin in June 2011 and Teva in August 2011, for infringement of ViiV's '191 patent. ViiV's case against Lupin arises out of Lupin's submission of Abbreviated New Drug Application ("ANDA") ███████, seeking approval from the Food and Drug Administration ("FDA") to market a generic version of ViiV's Trizivir® before expiration of the '191 patent. *See* D.I. 178, Ex. 1 ¶¶ 17-18. Lupin's ANDA filing contained a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") alleging that the claims of the '191 patent are either invalid and/or will not be infringed by the commercial manufacture, use, offer for sale, or sale within the U.S., or importation into the U.S., of Lupin's generic product. *Id.* ¶ 18.

ViiV's case against Teva Pharmaceuticals USA, Inc. ("Teva") arises out of Teva's submission of ANDA No. 079-246, seeking FDA approval to market a generic version of ViiV's Epzicom® product. Teva's ANDA contained a Paragraph IV certification similar to Lupin's.

The two actions were initially consolidated for discovery and case management (D.I. 23), and later for all purposes (D.I. 139). Following a *Markman* hearing, the Court issued an opinion, construing disputed claim terms. (D.I. 126).

ViiV asserts claims 26, 27, 29, and 30 against Teva. Teva conceded infringement under the Court's claim construction (D.I. 136), but asserts that the claims are invalid. ViiV asserts claims 4, 26, 27, 29, 30, 34, 36, 38, 39, and 47 against Lupin. Lupin disputes infringement and asserts that the claims are invalid. The Court held a bench trial on June 24-28, 2013, on

Defendants' defenses and ViiV's infringement claims against Lupin.  The statutory stays under the Drug Price Competition and Patent Term Restoration Act (the "Hatch-Waxman Act,") 21 U.S.C. § 355(j), expire on November 19, 2013 as to Lupin, and December 27, 2013 as to Teva.

## SUMMARY OF THE ARGUMENT

Lupin's infringement is straightforward.  Lupin's ANDA makes clear, in specific detail and beyond reasonable dispute, that Lupin's generic product is a formulation that meets all elements of claim 47, is intended to treat or prevent the symptoms or effects of an HIV infection, will be provided with instructions to patients for doing so, according to the methods of claims 4, 26, 27, 29, 30, 34, 36, 38, 39, and has no other use.

Lupin does not dispute most of the salient points.  Its primary arguments appear to be: (1) that the abacavir sulfate in its generic product and in ViiV's Epzicom® and Trizivir® products is not the abacavir claimed in the '191 patent; (2) that its product does not fall within the method claims because it treats the HIV infection rather than the "opportunistic conditions"; and (3) that ViiV did not show that Lupin would induce and contribute to the infringement of the method claims.  (*See* Tr. 1520:12-19 (closing argument); D.I. 187 (motion)).  As explained below, all three arguments are without merit and refuted by the evidence.  Moreover, even if the Court accepts the premises underlying the first two arguments, Lupin will infringe, at the very least, under the doctrine of equivalents, as ViiV's expert Dr. Langer explained at trial.  Indeed, Lupin's expert admitted that he had no response to Dr. Langer's doctrine of equivalents analysis.

## STATEMENT OF FACTS

The '191 patent (JX 1), is titled "Synergistic Combinations of Zidovudine, 1592U89 and 3TC." (D.I.178, Ex. 1 ¶ 7).  The patent issued on July 9, 2002, and expires on March 28, 2016.  (*Id.* ¶¶ 7, 9).  The named inventors are David Walter Barry and Martha Heider St. Clair.  *Id.* ¶ 8.  The patent claims recite formulations and methods of treating HIV patients, using (a) the "triple

combination" of abacavir, zidovudine, and lamivudine; or (b) the "double combination" of abacavir and lamivudine. (JX 1 cols. 12-16). ViiV asserts claims 4, 26, 27, 29, 30, 34, 36, 38, 39, and 47 against Lupin. *See id.* ¶ 28. Claims 4, 34, 36, 38, 39, and 47 are "triple combination" claims. Claim 47 is a formulation claim, and the rest claim methods "for the treatment or prevention of the symptoms or effects of an HIV infection." Claims 26, 27, 29, and 30 are "double combination" method claims.

"Abacavir" is also known as "ABC," "1592U89," or "(1S, 4R)-cis-4-[2-amino-6-(cyclopropylamino)-9H-purin-9-yl]-2-cyclopentene-1-methanol." (Tr. 187:23-188:1). "Zidovudine" is also known as "AZT." (D.I. 178, Ex. 1 ¶ 12; Tr. 188:2-4). "Lamivudine" is also known as "3TC" or "(2R, cis)-4-amino-1-(2-hydroxymethy 1-1,3-oxathiolan-5-y1)-(1H)-pyrimidin-2-one." (D.I. 178, Ex. 1 ¶ 11; Tr. 188:5-8).

ViiV holds NDA No. 21-205 for Trizivir[®], an oral tablet dosage form, which the FDA approved in November 2000 as an HIV drug. (D.I. 178, Ex. 1 ¶¶ 13-15) Trizivir[®] contains the "triple combination" of abacavir, 3TC, and AZT. ViiV also holds NDA No. 21-652 for an oral tablet dosage form for Epzicom[®], which the FDA approved in August 2004 as an HIV drug. (*Id.* ¶ 20). Epzicom[®] contains the "double combination" of abacavir and 3TC. The FDA's Orange Book lists ViiV's '191 patent in connection with both products. (*Id.* ¶¶ 16, 23).

ViiV's case against Lupin arises out of Lupin's ANDA seeking FDA approval for a generic version of Trizivir[®]. (*Id.* ¶ 17). An ANDA "piggybacks on the [NDA's] evidence of safety and efficacy." *Teva Pharms., USA, Inc. v. Leavitt*, 548 F.3d 103, 104 (D.C. Cir. 2008). Lupin was required to—and did—submit detailed information to the FDA on the composition, labeling, and prescribing information for its product, sufficient to show that: (a) Lupin's proposed labels prescribed, recommended or suggested the same conditions of use as Trizivir[®];

and that Lupin's generic product (b) had the same active ingredients as Trizivir®; (c) had the same route of administration, dosage form, and strength as Trizivir®; (d) was "bioequivalent" to Trizivir®; and (e) subject to exceptions not relevant here, had proposed labeling "the same as the labeling approved" for Trizivir®.  21 U.S.C. § 355(j)(2)(A)(i)-(v).

Portions of Lupin's ANDA were admitted into evidence at trial.  Lupin's corporate representatives Pramod Dahibhate and Vineeth Raghavan, and ViiV's experts Dr. Gary Blick and Dr. Robert Langer, discussed those documents and explained their significance.  ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████ ), proposed labeling, prescribing information, indications and use, including a "Medication Guide" (PTX 152), ████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████ ████████████████████████████ ).

To prove its infringement case, ViiV presented the '191 patent, portions of the '191 patent's prosecution history, the aforementioned portions of Lupin's ANDA, deposition testimony of Messrs. Dahibhate and Raghavan, and expert testimony from Drs. Blick and Langer.  (*See* Tr. 77:2-7 (Dr. Blick accepted as expert in the field of HIV/AIDS medicine); Tr. 181:19-182:8 (Dr. Langer accepted as expert on "the subject matter of the '191 patent and specifically in the field of pharmaceutical sciences and drug development, including drug formulations")).  Dr. Blick is a medical doctor who has treated HIV/AIDS patients for approximately 30 years, and specialized in that area for 26 years.  (Tr. 69:15-70:8); *see also* PTX 540 (CV).  Dr. Blick testified about the meaning of "treatment or prevention of the symptoms or

effects of an HIV infection" in the asserted method claims. (Tr. 79:22-80:12). Dr. Blick's testimony on that point was intended to rebut testimony from Lupin's expert Dr. Polsky (Tr. 195:4-16), but Lupin elected during trial not to call Dr. Polsky to the stand. (Tr. 243:12-244:7).

Dr. Langer is an Institute Professor at MIT, with a doctorate in chemical engineering. (Tr. 174:16-175:10; *see also* PTX 616 (CV)). Dr. Langer performs medical research, has served as Chair of the FDA Science Board, and has received numerous honors for his work, including the National Medals of Science from President Bush and Technology and Innovation from President Obama. (Tr. 179:9-18; PTX 616 at 1-5). Dr. Langer opined on Lupin's infringement in this case and walked through the evidence—primarily Lupin's ANDA—to explain how and why Lupin infringes the asserted claims.

In response, Lupin presented testimony from Dr. Edward Arnold, a professor at Rutgers University. Dr. Arnold's report made no mention of claim 4, (Tr. 252:16-24 (ViiV objecting on that basis); *id.* 260:8-23 (same)), and he admitted at trial that he did not offer any response to Dr. Langer's doctrine of equivalents analysis (Tr. 287:18-24), and that he was "instructed not to read" the deposition transcripts of Lupin's corporate representatives. (Tr. 279:15-24).

## ARGUMENT

Under 35 U.S.C. § 271(e)(2), it is "an act of infringement" "to submit" an ANDA "for a drug claimed in a patent or the use of which is claimed in a patent" if the ANDA applicant seeks approval to manufacture, use, or sell the drug at issue "before the expiration of such patent." The patentee bears the burden of proof of infringement by a preponderance of the evidence. *In re Alfuzosin Hydrochloride Patent Litig.*, No. 08-MD-1941, 2010 WL 1956286, at *2-3 (D. Del. May 14, 2010). "The only difference in the analysis of a traditional infringement claim and a claim of infringement under section 271(e)(2) is the timeframe under which the elements of infringement are considered." *Forest Labs., Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263, 1272

(Fed. Cir. 2007); *see also Alfuzosin Hydrochloride*, 2010 WL 1956286, at *2 (similar).   The traditional infringement analysis involves two steps:   first, the Court construes the claims, and second, "the properly construed claims are compared to the allegedly infringing [product]." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).   As explained below, ViiV demonstrated that Lupin's generic product will directly infringe formulation claim 47 and Lupin will indirectly infringe method claims 4, 26, 27, 29, 30, 34, 36, 38, and 39. Lupin's contrary arguments are without merit.

As an initial matter, Lupin Ltd. and Lupin Pharmaceuticals, Inc. ("LPI") are both proper defendants.   Lupin concedes that Lupin Ltd. is a proper defendant, but argues that LPI is not.   Per the Court's suggestion at closing argument (Tr. 1567:19-1568:5), ViiV and Lupin have attempted to resolve the matter in good faith, but as of the filing of this brief, the parties have not reached agreement.   Absent sufficient assurances from Lupin that eliminating LPI as a defendant will not hinder ViiV's ability to receive full relief from a judgment in its favor, ViiV's view is that both Lupin entities are proper defendants.   At closing, Lupin stated that LPI serves merely as "a U.S. mailbox" for Lupin Ltd.   (Tr. 1566:3-4).   Lupin's ANDA, however, demonstrates ███

████████████████████████████████████████████████████████

████████████████████████, and that LPI will be involved in marketing and distribution of the generic product in the United States.   (PTX 152 at LUPIN(TRIZ) 012370, 012378 (product will be "[m]anufactured by" Lupin Ltd. and "[m]anufactured for" Lupin Pharmaceuticals. Inc.);

████████████████ LPI will thus also be liable for any infringement of the '191 patent.   LPI has made similar arguments in other cases to those it makes here, and courts have consistently rejected those arguments. *See Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 493-94 (E.D. Va. 2005) (rejecting argument that LPI was merely a "mailbox" and ruling

that it was a proper defendant); *Wyeth v. Lupin Ltd.*, 505 F. Supp. 2d 303, 306, 307 (D. Md. 2007) (same, discussing *Aventis* and denying LPI's motion to dismiss).  More generally, this Court has recognized in similar circumstances that "liability for infringement may extend to an agent of the applicant who signs the ANDA and intends to benefit directly if the ANDA is approved."  *In re Rosuvastatin Calcium Patent Litig.*, 719 F. Supp. 2d 388, 396 (D. Del. 2010) (citing cases), *aff'd*, 703 F.3d 511 (Fed. Cir. 2012).  LPI is thus a proper defendant.

## I.   ViiV Demonstrated That Lupin Directly Infringes Formulation Claim 47

### A.   Claim 47 and the Court's Construction

Claim 47 is directed to the triple combination of abacavir, 3TC, and AZT.  Claim 47 depends from claim 46, which depends from claim 45.  The claims recite the following:

> **45.**  A pharmaceutical formulation comprising [abacavir], zidovudine [AZT], and [3TC] in a ratio of 1 to 20:1 to 20:1 to 10 by weight, in association with one or more pharmaceutically acceptable carriers therefor.

> **46.**  A formulation according to claim **45** in unit dosage form.

> **47.**  A formulation according to claim **46** in the form of a tablet or capsule.

(JX 1 cols. 15-16).  No terms of claim 47 were in dispute at the *Markman* hearing, though it bears noting that the Court construed "pharmaceutical formulation" in other claims as having its plain and ordinary meaning.  (D.I. 126 at 4, 12).

### B.   Lupin's Generic Product Contains the Claimed Active Ingredients, Including Abacavir

As Dr. Langer explained, ███████████████████████████████████████████, Lupin's generic product is a formulation comprising the recited abacavir, AZT and 3TC of claim 45. ████████████████████████████████████████

████████████████████████████████████████████████████████  PTX 152

---

\* All emphasis is added unless otherwise indicated.

at LUPIN(TRIZ) 012337 (Tablets *contain 300 mg abacavir* . . . ."); *id.* at LUPIN(TRIZ) 012340 ("[Lupin's generic product] is a fixed-dose combination of 3 nucleoside analogues: *abacavir*, [3TC], and [AZT] . . . ."); *id.* at LUPIN(TRIZ) at 012373 ("[Lupin's generic product] contains 3 medicines: *abacavir* . . . 3TC . . . and AZT.");

███████████████████████████   ████████████████████████

███████████████████████████████████   █████████

████████████████████████████████████████████████

███████████████████████████.

Lupin does not dispute that its generic product contains the triple combination of abacavir, 3TC, and AZT. Rather, Lupin contends that the asserted patent claims are directed to "abacavir free base" (though the term appears nowhere in the patent), and exclude the "abacavir sulfate" present in Lupin's generic product and in ViiV's Epzicom® and Trizivir® products. (*See* D.I. 187 at 1); Tr. 1520:14-17). Lupin's argument rests on a flawed construction of the patent claim term for abacavir, "(1S, 4R)-cis-4-[2-amino-6-( cyclopropylamino )-9H -purin-9-yl]-2-cyclopentene-1-methanol," as excluding all salts of abacavir, including "abacavir sulfate." (*See* D.I. 187 at 1). Lupin is wrong for the following reasons.

*First*, the evidence—including Dr. Langer's testimony and Lupin's ANDA—showed that abacavir sulfate *contains* the active agent abacavir—what Lupin now refers to as "abacavir free base." As Dr. Langer put it, "when you have abacavir sulfate, you have both abacavir and you have abacavir sulfate. In other words, *abacavir is in abacavir sulfate*. And it's not just me saying that … ████████████████████████████████

██████████████████). ██████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████   (*E.g.*, PTX 152 at LUPIN(TRIZ) at 012373 ("[Lupin's generic product] contains 3 medicines: ***abacavir*** . . . 3TC . . . and AZT.")).  As Dr. Arnold acknowledged, Lupin's tablet "eventually provides abacavir.  That is the active ingredient.  ***Otherwise, the product wouldn't work***."  (Tr. 280:13-19).  Thus, even if Lupin is correct in its narrow reading of the chemical formula claim term, the evidence shows that the generic product contains the claimed abacavir.

In *Merck & Co. v. Teva Pharmaceuticals USA, Inc.*, 347 F.3d 1367 (Fed. Cir. 2003), on similar facts and evidence, the Federal Circuit and this Court both rejected an argument similar to Lupin's.  There, the generic argued that the patent claims covered the "free acid" form of the active ingredient and not the salt form contained in both the branded and generic products.  *Id.* at 1369 (Teva argued non-infringement on the ground that "the claim requires 4-amino-1-hydroxybutane-1,1-biphosphonic acid and Teva's ANDA is for the monosodium salt.").  In rejecting that argument, the Federal Circuit described the claims and evidence as follows:

> The claim herein is directed to a method of treatment of urolithiasis and inhibiting bone reabsorption, by administering an effective amount of the specified biphosphonic acid.  ***The evidence of all the qualified witnesses was that persons in this field would understand that the acid is the active agent and that the acid is administered when it is in the form of the salt.***  There was no evidence that the claimed method of treatment is not achieved by the acid salt.  The record shows that Teva and Zenith, as well as Merck, label their products with the "free acid equivalent."

*Id.* at 1371.  The facts and evidence of *Merck* are strikingly similar to this case, and the Court

should reach the same conclusion.

*Second*, the patent's specification and claims confirm that Lupin is **not** correct in its narrow reading of the chemical formula claim term.  The inventors made clear in the specification that "therapeutic use" of the active ingredients included "salts of 1592U89 [abacavir]," and that "*[a]ll salts*, whether or not derived from a physically acceptable acid or base, are within the scope of the present invention."  (JX 1 at 3:25-27).  Given that clear language in the specification, it should be plain that the inventors contemplated salt forms of abacavir when drafting their claims.  Indeed, a comparison of claims 32 and 35 confirms that the term Lupin seizes upon is meant to include salts.  (*Id.* at 14:54-56 (claim 35, claiming "a method according to claim 32, wherein *the (1S, 4R)-cis-4-[2-amino-6-(cyclopylamino)-9H-purin-9-yl]-2-cyclopentene-1-methanol is the succinate salt*")).

At closing argument, Lupin cited *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006) to the Court (Tr. 1525:2-17), in support of its narrow interpretation, but *Pfizer*'s unique facts show that it is not relevant.  In *Pfizer*, the patentee asserted claim 6, which depended from claim 2, which in turn depended from claim 1.  *Id.* at 1291.  Independent claim 1 covered both the active ingredient acid and salts; claim 2 narrowed the scope of claim 1 so that it covered only the acid; and claim 6 broadened the scope of claim 2 so that it included a salt of the compounds of claim 2.  *Id.*  The Federal Circuit recognized that while an acid could be construed to include salts, citing *Merck v. Teva*, given the manner in which Pfizer narrowed and then broadened the scope of the claims, claim 6 was an improper dependent claim under 35 U.S.C. § 112 ¶ 4.  *Id.* at 1291 n.6, 1292.  No similar drafting issue is present here.  As the specification, claims 32 and 35, and the trial evidence described above make clear, the claims asserted in this case all cover salts of abacavir, and *Pfizer* is thus inapplicable.  *Pfizer* is also irrelevant because,

as shown above, the asserted claims cover and Lupin's generic product contains abacavir.

**C.    At the Very Least, the Abacavir Element Is Met Under the Doctrine of Equivalents**

To the extent the Court entertains Lupin's argument that the claims do not literally cover the abacavir sulfate present in Lupin's generic Trizivir, Lupin is nonetheless liable for infringement under the doctrine of equivalents.  Dr. Langer explained how Lupin infringes both literally and under the doctrine of equivalents, opining that even if abacavir sulfate is outside the literal scope of the claims—and it should not be—the differences are insubstantial, as both treat the symptoms of HIV in the same way by delivering the same active ingredient to inhibit reverse transcriptase in the same way.  (*See, e.g.*, Tr. 190:15-191:6).  Dr. Arnold admitted that he did not include any analysis of the doctrine of equivalents in his report (Tr. 287:18-24), and as explained above, he conceded that Lupin's tablet "provides abacavir.  That is the active ingredient. ***Otherwise, the product wouldn't work***."  (Tr. 280:13-19).  Where, as here, the infringing product performs substantially the same function, in substantially the same way, to achieve substantially the same result as a claim element, there is infringement under the doctrine of equivalents.  *See generally Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997).

Lupin has asserted that the doctrine of equivalents should not apply here because finding Lupin liable would "vitiat[e]" a claim element.  (D.I. 187 at 2).  The Federal Circuit has made clear that "vitiation" occurs "where the accused device contains the *antithesis* of the claimed structure."  *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012); *see also Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005) (rejecting "vitiation" and "public dedication" arguments).  Lupin's expert strained to insist on differences between abacavir sulfate and abacavir, but never so much as suggested that abacavir sulfate was the "antithesis" of abacavir.  Indeed, as Lupin's expert admitted at trial, he said nothing at all

11

about the doctrine of equivalents in his report.   (Tr. 287:18-24)   Lupin cannot defeat

infringement through unsupported attorney argument.

**D.      Lupin's Generic Product Contains the Other Limitations of Claim 47**

Lupin appears not to dispute that its generic product meets the remaining limitations of

claim 47, and the evidence at trial confirmed that it does, in fact, meet those limitations.

Lupin's ANDA specifies that the generic product contains abacavir, 3TC, and AZT in the

specified weight ratios.  The ANDA states that each tablet of Lupin's product contains 300 mg of

abacavir, 150 mg of lamivudine, and 300 mg of zidovudine.  (*E.g.*, PTX 152 at LUPIN(TRIZ)

12337 ("Tablets contain 300 mg abacavir, 150 of lamivudine, and 300 mg zidovudine.")

As  Dr.  Langer  explained,

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

In sum, the evidence at trial showed that Lupin directly infringes formulation claim 47.

**II.     ViiV Demonstrated That Lupin Indirectly Infringes Method Claims 4, 26, 27, 29, 30, 34, 36, 38, and 39**

The asserted method claims recite methods "for the treatment or prevention of the symptoms or effects of an HIV infection in an infected animal which comprises treating said animal with a therapeutically effective amount of" a combination of abacavir, 3TC, and optionally AZT. ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████       ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████.

There are two types of indirect infringement under the Patent Act:  induced and contributory, and proof of either one is sufficient to establish liability for infringement.  *See* 35 U.S.C. § 271(b)-(c).  To induce infringement, the defendant must have "intended to cause the acts that constitute the direct infringement," *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006), and must have known that the induced acts constituted infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068-71 (2011); *see also Alfuzosin Hydrochloride*, 2010 WL 1956286 at *3 (finding requisite intent where the "proposed label instructs physicians and patients how to use" the generic product).   To contribute to infringement, the defendant must have sold or offered to sell "a material or apparatus for use in practicing a patent process … knowing the same to be especially made or especially adapted for

use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); *see also Global-Tech*, 131 S. Ct. at 2068 (contributory infringement requires knowledge of the patent).

### A.   The Method Claims and the Court's Construction

#### 1.   Claims 26, 27, 29, 30, 34, 36, 38, and 39

Claims 34, 36, 38 and 39 are nearly identical to claims 26, 27, 29, and 30, respectively, except that claims 26, 27, 29, and 30 recite methods of treatment using a combination "comprising" ABC and 3TC and thus permit—but do not require—AZT.  Those claims provide as follows (JX 1 col. 14, highlighting added):

| Double Combination Claims (26, 27, 29, 30) | Triple Combination Claims (34, 36, 38, 39) |
|---|---|
| 20. A method for the treatment or prevention of the symptoms or effects of an HIV infection in an infected animal which comprises treating said animal with a therapeutically effective amount of a combination comprising [abacavir] and [3TC]. | 32. A method for the treatment or prevention of the symptoms or effects of an HIV infection in an infected animal which comprises treating said animal with a therapeutically effective amount of a combination comprising [abacavir], zidovudine, and [3TC] |
| 26. A method according to claim 20 wherein each [abacavir] and [3TC] is present in an amount from 5 to 1000 mg per unit dosage form. | 34.  A method according to claim 32 wherein each [abacavir], zidovudine, and [3TC] is present in an amount from 5 to 1000 mg per unit dosage form. |
| 27. A method according to claim 20 wherein the combination is administered simultaneously. | 36.  A method according to claim 32 wherein the combination is administered simultaneously. |
| 29. A method according to claim 20 wherein the combination is administered as a single combined formulation. | 38.  A method according to claim 32 wherein the combination is administered as a single combined formulation. |
| 30. A method according to claim 20 in which said animal is a human. | 39.  A method according to claim 32 in which said animal is a human. |

#### 2.   Claim 4

Claim 4 is similar to the other method claims, with the main difference being that the underlying independent claim recites "or a physiologically functional derivative thereof" for

each of the active ingredients.  Claim 4 depends from claim 2, which depends from claim 1.

Claim 1 recites the following (JX 1 col. 12):

> A method for the treatment or prevention of the symptoms or effects of an HIV infection in an infected animal which comprises treating said animal with a therapeutically effective amount of a combination comprising [abacavir] *or a physiologically functional derivative thereof*, zidovudine [AZT] *or a physiologically functional derivative thereof*, and [3TC] *or a physiologically functional derivative thereof*.

Claim 2 adds the limitation that the active ingredients "are present in a ratio of 1 to 20:1 to 20:1 to 10 by weight."

Claim 4 adds the limitation "wherein (lS, 4R)-cis-4-[2-amino-6-(cyclopropylamino)-9H-purin-9-yl]-2-cyclopentene-1-methanol [abacavir], zidovudine, and (2R, cis)-4-amino-1-(2-hydroxymethyl-1 ,3-oxathiolan -5-yl)-(1H)-pyrimidin-2-one [3TC] are present in a ratio of 1 to 3:1 to 3:1 to 2 by weight."  Notably, despite the fact that Dr. Langer presented an infringement analysis of claim 4 in his expert report and at trial, Dr. Arnold's expert report did not analyze claim 4 at all.  (Tr. 252:16-24 (ViiV objecting on that basis); *id.* 260:8-23 (same)).

### 3.    The Court's Construction

The parties agreed before trial that "simultaneously" means "at the same time, either in the same or separate pharmaceutical formulations."  (D.I. 126 at 2).

The Court construed "single combined formulation" to mean "the drug compounds are contained in a single pharmaceutical formulation, regardless of admixture."  (D.I. 126 at 12). The Court construed the term "animal" as taking its plain and ordinary meaning (*Id.* at 2-3).  The Court also construed "symptoms or effects of an HIV infection" as taking its plain and ordinary meaning (*id.*), consistent with ViiV's argument that the phrase did not require construction (D.I. 67 at 103), and against Lupin's argument that the term should be construed to cover only opportunistic conditions (*Id.* at 106).

The Court construed "physiologically functional derivative" to mean:

> Any physiologically acceptable salt, ether, ester, salt of such ester of 1592U89, zidovudine or 3TC; or solvates of any thereof and their physiologically functional derivatives; or any other compound which upon administration to the recipient, is capable of providing (directly or indirectly) such a compound or an antivirally active metabolite or residue thereof.

(D.I. 126 at 3).

**B.     Lupin's Generic Product Is To Be Used for the "Treatment or Prevention of the Symptoms or Effects" of HIV Infections**

The Court construed "treatment or prevention of the symptoms or effects of an HIV infection" to have its plain and ordinary meaning (D.I. 126), and did not accept Lupin's argument for limiting "symptoms or effects" to what has been referred to at trial as "opportunistic conditions."   (D.I. 67 at 106).   Lupin recasts that rejected claim construction argument as a noninfringement argument by arguing that treating an HIV infection somehow does not "treat[] or prevent[] the symptoms or effects of an HIV infection."   That argument has no support in the evidentiary record, as it comes from the report of Defendants' expert Dr. Polsky, who Lupin chose not to bring to trial.   (*See* Tr. 195:4-16; 243:12-244:7).   Moreover, the argument is without merit.   Both Dr. Blick and Dr. Langer testified specifically about the plain and ordinary meaning of "treatment or prevention of the symptoms or effects of an HIV infection," and explained why the evidence showed that that is what Lupin's generic product would do.   (Tr. 196-99 (Dr. Langer); *id.* 80-84, 87-95, 97 (Dr. Blick)).   As Dr. Blick explained, a plain reading of "treatment or prevention of the symptoms or effects of an HIV infection" includes suppressing the replication of the HIV virus.   (*See, e.g.*, Tr. 81:11-84:14; *see also* Tr. 92:15-24 (Lupin's generic indicated "specifically for the treatment of HIV infection"; PTX 152 at LUPIN(TRIZ) 012337 ("indicated … for the treatment of HIV-1 infection")).   By suppressing HIV replication, the drugs treat the HIV infection and treat and prevent opportunistic conditions.

(Tr. 83:12-84:14).  To support his testimony, Dr. Blick discussed the patent specification (Tr. 82:22-83:11 (citing JX 1 Abstract & col. 4:8-13)), clinical abstracts in the prosecution history documenting the effects of the drugs (Tr. 89:17-91:16 (discussing PTX 3 at ViiV_EZTZ_0000557-559 (Fischl, Van Dyke, and Staszewski abstracts))), Lupin's prescribing information in its ANDA (Tr. 92:1-94:19 (discussing PTX 152)), and his nearly three decades of experience as a physician treating HIV patients (Tr. 70:2-8; 94:20-95:4).

Dr. Langer similarly testified, with reference to the patent specification and Lupin's ANDA, that Lupin's product "treat[s] or prevent[s] the symptoms or effects of an HIV infection" within the meaning of the claims.  (Tr. 195-197).  Dr. Langer further explained that, to the extent the Court accepted Lupin's distinction between a treating or preventing the HIV infection, versus treating the opportunistic conditions by targeting the HIV infection, that distinction is insubstantial and Lupin thus infringes at least under the doctrine of equivalents.  (Tr. 198:13-199:1).  Dr. Blick's and Dr. Langer's testimony on that point was unrebutted.  Lupin chose not to call its expert Dr. Polsky to offer any contrary argument (Tr. 243:12-244:7), and Dr. Arnold admitted that he did not perform any analysis of the doctrine of equivalents.  (Tr. 287:18-24).

C.    **Lupin's Generic Product Contains the Active Ingredients Recited in All of the Method Claims, Including Abacavir, And At the Very Least, Meets the Abacavir Element Under the Doctrine of Equivalents**

As discussed above, Lupin's ANDA, and the testimony of Dr. Langer and Lupin's corporate witnesses, confirmed that Lupin's generic product contains the active ingredients abacavir, 3TC, and AZT, claimed in formulation claim 47.  (*Supra* §§ I.A-C).  Those are the same active ingredients claimed in the method claims, and Lupin's generic product thus meets the active ingredient for the same reasons (*see* § I.A, *supra*), and Lupin's contrary arguments are without merit for the same reasons (§ I.B, *supra*).  At the very least, Lupin infringes under the doctrine of equivalents (§ I.C, *supra*).

Moreover, Lupin's arguments about what form abacavir takes in the tablets are unsound in the context of the method claims for the additional reason that those claims recite the delivery of therapeutically effective amounts of the active ingredients. █████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ ████████ ███████████ ████████████████████████████████████; PTX 152 at LUPIN(TRIZ) at 012373 ("[Lupin's product] contains 3 medicines: *abacavir* … 3TC … and AZT. … When used together, they help lower the amount of HIV in your blood.")). Lupin's expert testified that Lupin's generic product "***provides abacavir***. ***That is the active ingredient***. ***Otherwise, the product wouldn't work.***" (Tr. 280:13-19; Tr. 276:23-277:2). Thus, even if one accepts Lupin's "free base" premise, it is insufficient to avoid infringement of the method claims.

Moreover, Lupin's noninfringement argument fails with respect to claim 4 for the additional reasons that (1) claim 4 depends from claim 1, which includes the "physiologically functional derivative" language (JX 1 col. 12); and (2) contrary to Lupin's argument (D.I. 187 at 1-2), the Court's construction of "physiologically functional derivative" is broader than salts.

### D. Lupin's Generic Product Contains the Remaining Limitations of the Method Claims

As with claim 47, Drs. Langer and Blick explained—with reference to Lupin's ANDA and other evidence—why and how Lupin meets the other limitations of the method claims.

#### 1. Therapeutically Effective Amount (all method claims)

Lupin has not disputed that its product delivers a therapeutically effective amount of the active ingredients to HIV patients. Lupin's product is indicated "specifically for the treatment of HIV infection," and works by delivering a therapeutically effective amount of the active ingredients. (*See, e.g.*, Tr. 92:10-93:19, 105:13-106:10 (Dr. Blick); PTX 152 at LUPIN(TRIZ)

18

012337 ("indicated … for the treatment of HIV-1 infection"); Tr. 280:13-19 (Dr. Arnold: "Otherwise, the product wouldn't work.")).

### 2. Weight ranges and ratios (claims 4, 26, and 34)

Lupin's ANDA demonstrates that its generic product would meet the weight ranges and ratios specified in claims 4, 26, and 34.  Lupin has not disputed this, and Dr. Langer identified the specific portions of the ANDA depicting the weights of the active ingredients, which were within the claimed ranges.  ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████  Tr. 191:13-21 (Langer slide 12)).

### 3. Single combined formulation to treat humans (claims 27, 29, 30, 36, 38, and 39)

Lupin appears not to dispute that its generic product is a single combined formulation, which provides simultaneous administration of the claimed active agents, and is indicated for the treatment of humans.  Dr. Langer pointed the Court to the portions of Lupin's ANDA that make that point clear.  (Tr. 199:17-200:10 (citing Langer slide 24 (citing PTX 152 at LUPIN(TRIZ) 012373)); *see also* D.I. 178, Ex. 1 ¶ 17 (stipulated facts); *supra* § I.D (evidence that Lupin's generic is in the form of a "tablet").

### E. Induced and Contributory Infringement of the Method Claims

Dr. Langer explained that Lupin's ANDA shows that Lupin has the necessary intent to induce infringement and that Lupin's generic product and proposed labeling would contribute to infringement.  (Tr. 201-203).  As to induced infringement, "[t]he pertinent question is whether the proposed label instructs users to perform the patented method.  If so, the proposed label may provide evidence of [the generic's] affirmative intent to induce infringement."  *See AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010).  Lupin's ANDA Paragraph IV

certification and letter to ViiV show that Lupin knew about the '191 patent, 

(Tr. 91:17-95:4 (Blick

testimony); *id.* 202:5-21 (Langer testimony); PTX 152 at LUPIN(TRIZ) 012340 (Lupin's generic

product "indicated in combination with other antiretrovirals or alone for the treatment of HIV-1

infection); *id.* at LUPIN(TRIZ) 012373 ("[Lupin's generic product] contains 3 medicines:

abacavir . . . 3TC . . . and AZT.…  When used together, they help lower the amount of HIV in

your blood.");

That evidence was unrebutted.

    As to contributory infringement, Dr. Langer testified, without contradiction, that Lupin's

product is a "necessary and material part" of the claimed methods and that it has no substantial

use other than for the treatment or prevention of the symptoms or effects of HIV infections as

claimed in the patent.  (Tr. 203:2-6).  Lupin's closing argument suggests that its arguments

disputing indirect infringement are subsumed within its "symptoms or effects" argument (Tr.

1527:2-14), which is meritless for the reasons stated above.  (*Supra* § II.C).

<u>**CONCLUSION**</u>

    The evidence at trial demonstrated that Lupin will infringe claims 4, 26-27, 29-30, 34, 36,

38-39, and 47, and ViiV thus respectfully requests that the Court enter judgment accordingly.

Respectfully submitted,

July 5, 2013

/s/ Brian E. Farnan

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market St.
12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

F. Christopher Mizzo (admitted *pro hac vice*)
William H. Burgess (admitted *pro hac vice*)
Charles A. Fernández (admitted *pro hac vice*)
Craig T. Murray (admitted *pro hac vice*)
Hugham Chan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 879-5000

Tiffany P. Cunningham (admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(302) 862-2000

*Attorneys for ViiV Healthcare UK Ltd. and ViiV Healthcare Co.*

## CERTIFICATE OF SERVICE

I, Brian E. Farnan, hereby certify that on July 5, 2013, a copy of Plaintiffs' Opening Post-

Trial Brief on Infringement was served on the following as indicated:

Via E-Mail
John C. Phillips, Jr.
Megan C. Haney
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pgslaw.com
mch@pgslaw.com

*Attorneys for Lupin Ltd. and Lupin*
*Pharmaceuticals, Inc.*

Via E-mail
William A. Rakoczy
Paul J. Molino
Deanne M. Mazzochi
Tara M. Raghavan
Neil A. Benchell
Matthew T. Lord
Yixin H. Tang
Harven DeShield
Rachel P. Waldron
John J. McGuirk
Rakoczy Molino Mazzochi Siwik LLP
wrakoczy@rmmslegal.com
paul@rmmslegal.com
dmazzochi@rmmslegal.com
traghavan@rmmslegal.com
nbenchell@rmmslegal.com
mlord@rmmslegal.com
ytang@rmmslegal.com
hdeshield@rmmslegal.com
rwaldron@rmmslegal.com
jmcguirk@rmmslegal.com

*Attorneys for Lupin Ltd. and Lupin*
*Pharmaceuticals, Inc.*

Via E-Mail
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Teva Pharmaceuticals*
*USA, Inc.*

Via E-Mail
David M. Hashmall
Ira J. Levy
Rivka Jungreis
Annemarie Hassett
Joshua A. Whitehill
Natasha E. Daughtrey
Gregory T. Sandidge
Goodwin Proctor LLP
dhashmall@goodwinprocter.com
ilevy@goodwinprocter.com
rjungreis@goodwinprocter.com
ahassett@goodwinprocter.com
jwhitehill@goodwinprocter.com
ndaughtrey@goodwinprocter.com
gsandidge@goodwinprocter.com

*Attorneys for Defendant Teva Pharmaceuticals*
*USA, Inc.*

  /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)